[Cite as *Williams v. Goodyear Tire & Rubber Co.*, 2017-Ohio-4052.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

RUTH WILLIAMS

    Appellant

    v.

GOODYEAR TIRE & RUBBER
COMPANY

    Defendant

    and

AKRON GASKET & PACKING
ENTERPRISES

    Appellee

C.A. No.     28253

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    AC-2014-04-2035

DECISION AND JOURNAL ENTRY

Dated: May 31, 2017

TEODOSIO, Judge.

**{¶1}** Appellant, Ruth Williams, appeals the order of the Summit County Court of Common Pleas granting summary judgment in favor of Akron Gasket & Packing Enterprises, Incorporated. This Court reverses and remands.

I.

**{¶2}** On April 17, 2014, Ruth Williams, individually and as the executrix for the estate of Donald Williams, filed a complaint for product liability, negligence, wrongful death, and intentional tort against multiple defendants stemming from her husband Donald Williams' potential exposure to asbestos-containing materials during his employment at PPG Industries and

Goodyear Tire & Rubber Company ("Goodyear"). This exposure was alleged to have caused Mr. Williams' subsequent illness and death. Appellee, Akron Gasket & Packing Enterprises, Inc. ("Akron Gasket"), was alleged to have supplied asbestos-containing tape to which Mr. Williams was exposed during his employment at Goodyear.

{¶3} On April 20, 2016, the trial court granted Akron Gasket's motion for summary judgment, finding that no evidence had been presented to suggest that Mr. Williams had been exposed to asbestos as the result of any product supplied to Goodyear by Akron Gasket. Ms. Williams now appeals, raising three assignments of error.

II.

ASSIGNMENT OF ERROR ONE

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF AKRON GASKET AND PACKING COMPANY ON THE BASIS [THAT] CO[-]WORKER TESTIMONY WAS HEARSAY AS NOT BASED ON PERSONAL KNOWLEDGE.

{¶4} In her first assignment of error, Ms. Williams argues the trial court erred in finding that the testimony of Mr. Williams' co-worker was hearsay and in granting summary judgment on that basis. We agree.

{¶5} Appellate review of an award of summary judgment is de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Summary judgment is appropriate under Civ.R. 56 when: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977), citing Civ.R. 56(C). A court must view the facts in the light most favorable to the non-moving party and must resolve any doubt in favor of the non-moving party. *Murphy v. Reynoldsburg*, 65

Ohio St.3d 356, 358–359 (1992). A trial court does not have the liberty to choose among reasonable inferences in the context of summary judgment, and all competing inferences and questions of credibility must be resolved in the nonmoving party's favor. *Perez v. Scripps–Howard Broadcasting Co.*, 35 Ohio St.3d 215, 218 (1988).

{¶6} The Supreme Court of Ohio has set forth the nature of this burden-shifting paradigm:

> [A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.

*Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996).

{¶7} With regard to an asbestos liability case, the plaintiff has the burden of proving exposure to asbestos that was manufactured, supplied, installed, or used by the defendant and that the product was a substantial factor in causing the plaintiff's injury. *Horton v. Harwick*, 73 Ohio St.3d 679 (1995), syllabus; R.C. 2307.96(B).

{¶8} The evidence before the trial court on the motion for summary judgment consisted in large part of the deposition testimony of one of Mr. Williams' co-workers. In its judgment entry, the trial court found that the co-worker had "no personal knowledge concerning whether asbestos-containing tape that was used [sic] supplied by [Akron Gasket]" or if "it was a

substantial factor that ultimately led to Mr. Williams' death." The trial court went on to find that the co-worker "provide[d] hearsay testimony concerning the asbestos tape in use at Goodyear," and that "such is not satisfactory evidence for * * * summary judgment analysis." The trial court further explained: "[T]he plaintiff cannot now establish that those products in use at Goodyear were supplied by [Akron Gasket]. Without such product identification, there can be no determination that the tape was a substantial factor in causing Mr. Williams' illness and death." The trial court then reiterated:

> The evidence presented demonstrates that although the defendant may have sold, produced, supplied and/or manufactured some asbestos-containing products, the plaintiff has failed to demonstrate that Mr. Williams used or came into contact with those specific asbestos-containing products while working at Goodyear and that those products were a substantial factor in causing his illness and subsequent death. No evidence has been presented to suggest that Mr. Williams was exposed to asbestos as a result of any product supplied to Goodyear by [Akron Gasket].

These findings made by the trial court—indicating that the co-worker had no personal knowledge of the supplier of the tape to Goodyear—are not supported by the evidence.

**{¶9}** The co-worker's deposition testimony provides the following:

Q. So is it your testimony that Akron Gasket supplied the tape --

A. Yes.

Q. -- that Mr. Williams used in the industrial products building?

He further testified:

Q. So you actually -- did you actually personally observe Mr. Williams working with tape, cement and insulation?

A. Yes.

Q. Okay. And are those all the asbestos-containing products you observed him working on, tape, cement, insulation?

A. Yes.

* * *

Q.  Do you know the supplier of the tape that Mr. Williams used in 371-H?

A.  Akron Gasket.

During his second deposition, he also testified:

Q.  Pursuant to your testimony in July for this matter, you testified Akron Gasket [was] a supplier of tape Mr. Williams worked with in two locations at Goodyear, [department] 214-B and [department] 317-H, correct?

* * *

A.   I was remiss if I didn't mention Chemigum as well, 345-D.

Q.  Okay.  We'll get to that.

A.  But yes, on those two.

* * *

Q.  And do you know who supplied that tape that Mr. Williams would have worked with or around in the Chemigum?

A.  Akron Gasket.

* * *

Q.  And am I correct in saying that your sole basis for associating Akron Gasket with the tape in these locations is that you saw the name on -- was it a stamp or was it a tag?

A.  It was a tag with a metal -- metal tie on it, a piece of wire, probably 2 inches by 4 inches with a company name on it.

* * *

Q.  Let's talk about the wire.  You said about 2 by 4?

A.  2 inches by 4 inches, a wire tag with a piece of cardboard on the end of it.

Q.  And was anything -- what was written -- was it actually on the cardboard, or was it the tag?

A. It was like a manila folder thickness. I can probably draw you what one of these cards looked like.

Q. What was written on that tag?

A. The company Akron -- supplied by Akron Gasket.

{¶10} The co-worker's testimony provides non-hearsay evidence that sets forth specific facts demonstrating that a genuine issue exists as to whether Akron Gasket supplied Goodyear with tape used by Mr. Williams. The trial court's finding that the co-worker testified "that the basis for his opinion that Akron Gasket provided tape to Goodyear was that he had been told by this supervisors and that it was common knowledge among Goodyear employees" is not supported by the record.

{¶11} With regard to whether the tape contained asbestos, Akron Gasket again argues that the co-worker's testimony was hearsay. It is as to this question that the co-worker offered testimony stating that his belief that the tape at issue contained asbestos was based upon "common knowledge" and that his supervisor had told him the tape contained asbestos. However, on this issue, Akron Gasket has not met its burden in pointing to evidentiary materials that demonstrate there is no genuine issue as to the facts. While Akron Gasket disputes the specific issue of whether it provided tape to Goodyear, it does not dispute the general fact that it was a supplier of tape containing asbestos. The testimony of the company owner from 2001 provided that although it did offer supplies of asbestos tape, Akron Gasket did not provide any tape to Goodyear. As we have noted, there is conflicting testimony as to whether Akron Gasket provided tape to Goodyear, thus creating a genuine issue of material fact. In the event that Akron Gasket had supplied tape to Goodyear, it provided no evidence to refute the testimony that it was commonly known to contain asbestos.

{¶12}  Finally, on the issue of whether there is evidence that Mr. Williams was exposed to tape supplied by Akron Gasket, the co-worker's testimony provided that he saw Mr. Williams working with asbestos-containing tape and removing asbestos tape at Goodyear.  He specifically testified that the supplier of the tape that Mr. Williams used in 371-H was Akron Gasket, and further stated: "I definitely saw him using tape.  We all used tape.  At one period of time, asbestos tape was only to be put on by pipe coverers and then they relaxed that because it wasn't efficient enough for their operation."

{¶13}  Viewing the evidence in a light most favorable to Ms. Williams, genuine issues of material fact remain to be litigated.  The trial court therefore erred in granting the motion for summary judgment.

{¶14}  Ms. Williams' first assignment of error is sustained.

ASSIGNMENT OF ERROR TWO

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON THE BASIS THAT A NON[-]EXPERT CO[-]WORKER WAS UNABLE TO STATE THAT A PRODUCT WAS A SUBSTANTIAL FACTOR IN PLAINTIFF'S DISEASE AND DEATH, BY STATING THAT THE "COURT CANNOT CONCLUDE ANY PRODUCT WAS A SUBSTANTIAL FACTOR" AND BY NOT CONSIDERING PLAINTIFF'S EXPERT AFFIDAVITS ON THIS ISSUE.

{¶15}  In her second assignment of error, Ms. Williams argues the trial court erred in finding that it could not conclude that any product was a substantial factor in Mr. Williams' illness and death and by not considering expert affidavits on the issue.  We agree.

{¶16}  The trial court found:

[Mr. Williams' co-worker] provide[d] hearsay testimony concerning the asbestos tape in use at Goodyear.  [Ms. Williams' industrial expert] relie[d] on that hearsay to provide additional hearsay testimony, on which, in turn, [Ms. Williams' medical expert] offers the hearsay testimony concerning medical causation.  Such is not satisfactory evidence for trial and accordingly for summary judgment analysis.

Consequently, the trial court went on to conclude that Ms. Williams failed to demonstrate that the tape was a substantial factor in causing her husband's illness and subsequent death. The basis of the trial court's conclusion with regard to causation was built upon the court excluding the co-worker's testimony as hearsay, with the court determining that the subsequent expert testimony was founded upon the co-worker's hearsay testimony and therefore inadmissible. Because we have determined that the trial court erred in its hearsay determination of the co-worker's testimony, the court's subsequent exclusion of the expert testimony on that basis was also in error.

{¶17} Ms. Williams' second assignment of error is sustained to the extent that the trial court based its decision on an improper hearsay analysis as set forth in our disposition of Ms. Williams' first assignment of error.

### ASSIGNMENT OF ERROR THREE

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT WHEN IT TOOK OVER THE ROLE OF THE JURY AND WEIGHED THE EVIDENCE PRESENTED, DETERMINED THE CREDIBILITY OF CONFLICTING WITNESSES AND FAILED TO VIEW THE EVIDENCE IN FAVOR OF THE PLAINTIFF AS THE NON[-]MOVING PARTY AFTER ACKNOWLEDGING THAT SOME EVIDENCE EXISTED.

{¶18} In her third assignment of error, Ms. Williams argues the trial court erred in weighing the evidence, determining credibility, and in failing to view the evidence in a light most favorable to the non-moving party. We decline to address these arguments, as our resolution of Ms. Williams' first and second assignments of error will necessitate a new ruling and analysis by the trial court.

III.

{¶19}  Ms. Williams' first and second assignments of error are sustained.  The judgment of the Summit County Court of Common Pleas is reversed and remanded for further proceedings consistent with this decision.

Judgment reversed
and cause remanded.

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution.  A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

THOMAS A. TEODOSIO
FOR THE COURT

HENSAL, P. J.
SCHAFER, J.
CONCUR.

APPEARANCES:

JESSICA M. BACON, Attorney at Law, for Appellant.

LAURA KINGSLEY HONG and BRENDAN P. KELLEY, Attorneys at Law, for Appellee.